In re Margaret Philomena
DAILY, Debtor.

FEDERAL DEPOSIT INSURANCE
CORPORATION, Receiver for
Indian Springs State Bank, Plaintiff,

v.

Margaret Philomena DAILY,
Defendant (Two Cases).

Bankruptcy No. 84–00590.
Adv. Nos. 85–0133, 89–0039.

United States Bankruptcy Court,
D. Hawaii.

Jan. 7, 1991.

Jerrold K. Guben, Honolulu, Hawaii, for plaintiff.

Enver W. Painter, Honolulu, Hawaii, for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW AND ORDER RE: MOTION TO DISMISS RE: ADV. NO. 89–0039

JON J. CHINEN, Bankruptcy Judge.

The Federal Deposit Insurance Corporation ("FDIC"), receiver for Indian Springs State Bank ("ISSB"), filed a Complaint to Determine Dischargeability of Debt (Adversarial No. 89–0039, hereinafter "Second Complaint") due from Margaret Daily ("Debtor"). On August 24, 1990, the Court heard arguments of counsel and thereafter dismissed Adversarial 85–0133 (hereinafter "First Complaint") for failure to prosecute. Present at the hearing were Enver W. Painter, appearing for the Debtor, and Jerrold K. Guben, appearing for the FDIC. At the hearing Mr. Guben inquired as to the effect of the dismissal of the First Complaint on the Second Complaint. The Court, having reviewed the memoranda submitted, the records herein, and having duly considered the evidence and arguments of counsel, makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

1. On December 14, 1984, Debtor filed for relief under Chapter 11 of the Bankruptcy Code. Thereafter, on January 31, 1985, Sammy G. Daily, Debtor's husband, filed his petition for reorganization under Chapter 11.

2. On January 27, 1984, ISSB was declared insolvent by the Kansas State Bank Commissioner and the FDIC was appointed receiver. ISSB had made loans to the Debtor and was a creditor when the Debtor declared bankruptcy. On July 17, 1985, the FDIC, as receiver for ISSB, filed the First Complaint to determine the dischargeability of the Debtor's obligation to FDIC pursuant to 11 U.S.C. 523(a)(2)(B). The complaint alleges the following:

*Count 1*

Debtor obtained a $200,000 loan from ISSB which was secured by all of the Debtor's interest in First United Partners IV. The FDIC alleges that Debtor (along with Mr. Daily, her husband), with intent to deceive, submitted false financial statements to ISSB in order to obtain the loan. A balance of $99,-161.64 remains outstanding on the loan.

*Count 2*

In order for the FDIC to extend a $227,739.74 loan to First United Partner 9, the Debtor and her husband personally guaranteed the loan. FDIC claims that the Debtor and her husband submitted false financial statements to FDIC in order to guarantee the loan. A balance of $227,739.74 in principal and $90,783.92 in interest remains unpaid.

3. On July 29, 1985, the FDIC entered into a stipulation, signed only by Debtor's husband, deferring an adjudication of the FDIC's complaint against Sam Daily until non-bankruptcy proceedings in Kansas could be completed. The non-bankruptcy proceedings would involve numerous issues and findings of fact which would be needed in the bankruptcy proceedings.

4. Because of the joint ownership of assets and debts between the Debtor and her husband, on September 23, 1985, the Court entered an order approving Joint Administration of Estates.

5. On October 19, 1988, Debtor filed a Motion to Convert Case to Chapter 7 due to the Debtor's inability to formulate a reorganization plan. The motion was granted on November 9, 1988.

6. On February 7, 1989, the Bankruptcy Court issued an Order to Show Cause why the FDIC's First Complaint should not be dismissed for failure to prosecute.

7. On February 17, 1989, all parties in interest were advised that May 22, 1989, was set as the last date for the filing of complaints objecting to discharge in the converted Chapter 7 case.

8. On March 3, 1989, Debtor filed her objections to FDIC's Response to Order to Show Cause. On March 21, 1989, the FDIC filed a reply to the Debtor's objections. The FDIC contended that the reason for the delay in prosecution of the First Complaint was because of the stipulation between the FDIC and Sam Daily to stay the bankruptcy adversary proceedings until other lawsuits in Kansas against Sam and Margaret Daily could be resolved. The FDIC also stated that, under Bankruptcy Rule 1019(3) ("Rule 1019(3)"), it could refile the complaint because a new filing period was created by the conversion to a Chapter 7 proceeding. Thereafter, the FDIC filed the Second Complaint on May 11, 1989.

9. On August 8, 1990, Debtor filed a Motion to Dismiss the First Complaint pursuant to the provisions of Bankruptcy Rule 7041(b). On August 24, 1990, the court granted with prejudice the Debtor's Motion to Dismiss the First Complaint. FDIC then inquired as to the effect of the dismissal of the First Complaint on the Second Complaint.

10. Debtor contends:

a. An order dismissing the Second Complaint should be entered because the Second Complaint is only a refiled version of the FDIC's First Complaint, which the court has dismissed with prejudice.

b. Under the doctrine of res judicata and collateral estoppel, when a court enters final judgement on the merits of a cause of action, the parties are bound by the decision and the action cannot be brought again into litigation between the parties upon any ground whatsoever.

c. A dismissal with prejudice is a judgement on the merits and bars the relitigation of the same cause of action.

11. FDIC contends:

a. That the Second Complaint is independent of the First Complaint and therefore, any action taken by the court regarding the First Complaint does not affect the viability of the Second Complaint.

b. Under Bankruptcy Rules 4007(c) and 1019, in a conversion from Chapter 11 to Chapter 7, a creditor has a second opportunity to file a complaint to determine dischargeability.

c. The statutes stated above do not impose conditions or restrictions on the right of a creditor to file a complaint under the converted Chapter 7 proceedings. The creditor has 60 days to file a complaint to determine dischargeability after the conversion to Chapter 7.

## CONCLUSIONS OF LAW

The decision of this case rests upon the outcome of two issues: (1) does Rule 1019(3) allow the FDIC a second opportunity to file the same complaint to determine dischargeability in a converted Chapter 7 case; and (2) even if it is proper to file the same claim under Rule 1019(3), is it nevertheless prohibited by the doctrine of res judicata.

*May the FDIC file the Second Complaint under Rule 1019(3)*

■ Bankruptcy Rule 4007(c) allows the creditor 60 days from the first meeting of creditors to file a complaint to determine dischargeability of the debtor. When the debtor converts from a Chapter 11 to a Chapter 7 proceeding, Rule 1019(3) allows "a new time period for filing claims, a complaint objecting to discharge, or complaint to obtain a determination of dischargeability of any debt shall commence pursuant to Rules ... 4007 ..." Bankruptcy Rules 1019(3).

The majority of the cases involving Rule 1019(3) are situations where creditors who did not file a complaint under a Chapter 11 or 13 reorganization are given a fresh opportunity to file under the converted Chapter 7 liquidation. Failure to initially file under Chapter 11 or 13 often occurs because creditors hope a reorganization plan will provide payment in full. *F & M Marquette National Bank v. Richards*, 780 F.2d 24, 26 (8th Cir.1985); *In re Goralnick*, 81 B.R. 570, 572 (Bankr. 9th Cir.1987). Other reasons for not initially filing a complaint include a reduction of costs, avoidance of an adversarial relationship, and a reduction in the volume of paperwork for the bankruptcy court. *In re Goralnick*, 81 B.R. 570 at 573.

The instant case differs in that the FDIC did file a complaint under the original Chapter 11 proceedings and simply refiled the complaint when the Debtor converted to Chapter 7. A similar situation occurred in *In Matter of Schwartzman*, 63 B.R. 348 (Bankr.S.D.Ohio 1986). In *Schwartzman*, the debtor filed for bankruptcy under Chapter 11. The creditor thereafter filed a complaint objecting to the discharge of the debt due to debtor's fraudulent representations to obtain the loans. Subsequently, the debtor converted the Chapter 11 proceeding to a Chapter 7. The Creditor then filed a second complaint which contained two identical counts of the first complaint. The debtor moved to dismiss the entire second complaint because of the multiplicity of suits. The Court, however, did not dismiss and allowed the creditor to amend the second complaint and combine with the first complaint. The Court stated:

> Granting leave to amend is in keeping with the general policy of the Federal Rules of Civil Procedure that controversies should be decided on their merits and not on procedural technicalities. *Schwartzman*, 63 B.R. 348, at 352.

The *Schwartzman* case differs from the present case in that here the court ultimately dismissed the First Complaint due to the failure to prosecute. However, it is important to note that the Second Complaint was filed on May 11, 1989, and the First Complaint was subsequently dismissed on August 24, 1990. Therefore, *at the time of the filing* of the Second Complaint, the First Complaint had not been dismissed and the FDIC was entitled to file the Second Complaint.

As stated by the FDIC, neither the language of Rule 1019(3), the advisory committee comments, nor prior cases impose conditions or restrictions on who may file a complaint to determine dischargeability under a converted Chapter 7 case. While the present situation does not conform to the commonly stated uses of Rule 1019(3), those uses are not exclusive. The rule allows all creditors a fresh 60 days to file a complaint in a converted chapter 7 case.

The Debtor contends that the purpose of a new bar date in a converted case is not to allow the objecting creditor an opportunity

to raise for the second time an issue already decided. The error of this statement is that at the time the second complaint was filed, the first complaint had not been dismissed and was not already decided.

For the reasons stated, the court holds that on May 11, 1989, the FDIC was entitled to file the Second Complaint pursuant to Rule 1019(3).

*Is the Second Complaint prohibited under Res Judicata?*

■ Even though the FDIC was within its legal right to file the second complaint under Rule 1019(3), should it nevertheless be barred because of the doctrine of res judicata? After consideration of the policy reasons and prior cases concerning res judicata, the court holds that the Second Complaint should not be dismissed.

The dismissal of the First Complaint was due to a failure to prosecute pursuant to Bankruptcy Rule 7041(b).[1] The relevant provision of the rule states:

Rule 41: Dismissal of Actions ...

(b) Involuntary Dismissal: Effects Thereof. For Failure of the plaintiff to prosecute ..., a defendant may move for dismissal of an action or of any claim against the defendant.... The court as trier of the facts may then determine them and render judgement against the plaintiff.... Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits. Rules Bankr.Proc.Rule 7041(b), 11 U.S.C.A.

A literal reading of Rule 7041(b) plainly states that a dismissal for a failure to prosecute operates as an adjudication upon the merits. Under a strict application of res judicata [2] the second complaint cannot be brought because it is identical to the first complaint which was dismissed with prejudice. However, res judicata is to be "applied in particular situations as fairness and justice require, and that it is not to be applied so rigidly as to defeat the ends of justice." 46 *Am.Jur.*2d, sect. 402 (1969).

■ Several cases recognize that dismissal under Fed.R.Civ.P. 41(b) ("Rule 41(b)") will not necessarily be accorded res judicata effect where the merits of the case were not reached in the prior action. *Costello v. United States*, 365 U.S. 265, 81 S.Ct. 534, 5 L.Ed.2d 551 (1961); *Saylor v. Lindsley*, 391 F.2d 965 (2d Cir.1968); *Bush v. United States Postal Service*, 496 F.2d 42 (4th Cir.1974). Rule 41(b) is a derogation of the common law which denied dismissal on any other grounds other than adjudication of the merits. Therefore, Rule 41(b) is to be strictly construed. *Madden v. Perry*, 264 F.2d 169, 175 (7th Cir. 1959). Factors to be considered include inconvenience of preparing a defense (*Costello*, 365 U.S. 265, 81 S.Ct. 534), history of carelessness and delay by plaintiff (*Nasser v. Isthmian Lines*, 331 F.2d 124 (2d Cir. 1964)), willful delay (*Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958)), actual prejudice to the defense and attorney error through no fault of the client (*Bush*, 496 F.2d 42).

The FDIC contends that upon joint administration of the cases of the Debtor and her husband, the stipulation staying proceedings until the non-bankruptcy cases were settled applied to both the Debtor and her husband. This court held that, since Debtor did not sign the stipulation, she was not bound to the stay and had a right to a speedy trial. While the FDIC was erroneous in assuming that the stay applied to the Debtor, it is not disputed that a stay

---

**1.** Note that the wording of Rules Bankr.Proc. Rules 7041(b) is identical to F.R.C.P. 41(b). Therefore, the court's analysis will include policy reasons and prior caselaw involving FRCP 41(b).

**2.** The doctrine of res judicata is that an existing final judgement rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction, is conclusive of causes of action and of facts or issues thereby litigated, as to the same parties and their privies, in all other actions in the same or any other judicial tribunal of concurrent jurisdiction. 46 *American Jurisprudence* 2d, sect. 394.

would have been proper to prevent duplication of work. Therefore, the only "wrongdoing" by the FDIC was that it failed to get the Debtor to sign the stipulation. There is no evidence of willful delay.

The Debtor alleges that the FDIC's reliance on the stipulation as the reason for delay is a sham and last minute effort to justify negligence. Even if the FDIC was negligent in not including Debtor in the stipulation, an isolated incident will not automatically trigger res judicata. A pattern of carelessness and neglect is required. In *Nasser,* the plaintiff's counsel had exhibited a history of neglect including not appearing before the court and failing to file motions in a timely manner. The court upheld the defendant's res judicata motion because of the "sad history of dilatory conduct" by the plaintiff's counsel. *Nasser,* 331 F.2d 124 at 128.

■ Moreover, courts are reluctant to punish litigants for errors of their attorney. "Rightfully, courts are reluctant to punish a client for the behavior of his lawyer. *Edsall v. Penn Central Transportation Co.,* 479 F.2d 33, 35 (6th Cir.1973). Therefore, in situations where a party is not responsible for the fault of his attorney, dismissal may be invoked only in extreme circumstances. *Industrial Building Materials, Inc. v. Interchemical Corp.,* 437 F.2d 1336, 1339 (9th Cir.1970)." *Bush,* 496 F.2d 42, 44. A litigant cannot always avoid adverse consequences by blaming their attorney. However, in the instant case the error in judgement solely by the FDIC's counsel is not an extreme circumstance that would warrant dismissal.

A res judicata dismissal under Rule 41(b) would be possible if the Debtor could show an inconvenience in preparing to meet the merits of the First Complaint. *Costello,* 365 U.S. 265, 287, 81 S.Ct. 534, 545; *Nasser,* 331 F.2d 124, 127. In the case at bar, in 1986 the Debtor did file a response to the FDIC's first complaint. However, there is no evidence of any subsequent activity by either side until the Bankruptcy Court issued the Order to Show Cause in February 1989. The Debtor made no claim to any extended effort to prepare a defense for the First Complaint.

A dismissal could also be granted if the Debtor proves prejudice to her defense. There must be specific evidence of actual prejudice; mere dismissal with prejudice by the court is not an assumption of actual prejudice. "It is generally held that a judgement dismissing an action for lack of prosecution does not operate as res judicata, even though the judgement purports to be with prejudice." 46 *Am.Jur.*2d, sect. 506 (1969). In her motion to dismiss the First Complaint, the Debtor claims substantial prejudice to her defense because the financial statements were over eight years old, witnesses have moved away, and a general presumption of prejudice due to the long delay. However, the Debtor does not identify the witnesses or otherwise prove specific instances of actual prejudice. In addition, the Debtor has been involved in other non-bankruptcy cases in Kansas which have utilized the same facts and evidence as would be required in the bankruptcy case. Therefore, the Debtor has failed to prove that her defense was hampered by the delay.

Finally, if the court were to hold res judicata applicable, not only would the FDIC suffer but also hurt would be the creditors of ISSB, who were in no way involved in any of the current proceedings. This is too harsh a consequence for the good faith creditors of ISSB.

For all the foregoing reasons, the court denies the Debtor's motion to dismiss the Second Complaint. The decision here does not consider the merits of the case. It merely allows the FDIC and Debtor a fair opportunity in a court of law. To the extent that these Conclusions of Law constitute Findings of Fact, they shall so be deemed.

IT IS SO ORDERED.